1   **WO**

2

3

4

5                    IN THE UNITED STATES DISTRICT COURT

6                       FOR THE DISTRICT OF ARIZONA

7

8   RICHARD M. HORTON,              )   No. CV 05-00432-PHX-SMM
                                    )
9                                   )   **MEMORANDUM OF DECISION AND**
              Plaintiff,            )   **ORDER**
10                                  )
    v.                              )
11                                  )
    PHOENIX FUELS, CO., INC, et al.,)
12                                  )
              Defendants.           )
13  _____)

14

15          Before the Court is Defendants' The Prudential Insurance Company of America

16  and Giant Industries, Inc. Group Long Term Disability Policy Motion for Summary

17  Judgment, or in the alternative, Partial Summary Judgment (Doc. 58).  Also pending is

    Plaintiff Richard Horton's Cross-Motion for Summary Judgment (Doc. 66).  Having
18
    reviewed the administrative record and the parties' arguments, the Court now issues this
19
    Memorandum of Decision and Order.
20
                                    **BACKGROUND**
21
    **A.     Statement of Facts** [1]
22

23  _____

24          [1] While Defendants submitted a Statement of Facts in conjunction with their Motion
    for Summary Judgment (Doc. 59), Plaintiff Horton has failed to file his own Statement of
25  Facts.  The Local Rules for the District of Arizona requires a party opposing a motion for
    summary judgment to file a statement that is separate from the party's memorandum of
26  points and authorities.  LRCiv 56.1(b).  This statement must contain two things:

27          (1) for each paragraph of the moving party's separate statement of facts, a
            correspondingly numbered paragraph indicating whether the party disputes the
28          statement of fact set forth in that paragraph and a reference to the specific
            admissible portion of the record supporting the party's position if the fact is

1    Plaintiff Richard Horton ("Horton") was employed by Giant Industries, Inc.

2  ("Giant") as a truck driver and was paid hourly wages, as well as compensation for

3  bonuses and overtime work (Doc. 59, Def's Statement of Facts ("DSOF") ¶ 1).  As part of

4  its compensation plan, Giant offered its employees certain benefits, including income

5  replacement in the event of disability.  As an employee of Giant, Horton participated in

6  Giant's employee welfare benefits plan ("Giant LTD Plan") and was covered under

7  Group Policy #22949 issued by The Prudential Insurance Company of America

8  ("Prudential") (Id.).

9    The Giant LTD Plan is an employee welfare benefit plan governed by the

10  Employee Retirement Income Security Act of 1974, as amended ("ERISA").  The Giant

11  LTD Plan provides that Prudential is the long-term disability insurer and Claims

12  Administrator (Doc. 58, 3:16-19).  Prudential issued Group Policy #24929 to Giant which

13  provided disability benefits to eligible Giant employees (Id.).  The Giant LTD Plan grants

14  Prudential "the sole discretion to interpret the terms of the Group Contract, to make

15  factual findings, and to determine eligibility for benefits."  (DSOF ¶ 16)  This dispute

16  arises out of Prudential's calculation of Horton's long-term disability benefits.

17    The core plan paid for by Giant provided income replacement of 40% of pre-

18  disability earnings, up to a maximum monthly benefit of $2,000.00 (Doc. 62, Ex. 1, PRU

19  HORTON AR0008).  The core plan also had a benefit duration of five years; thus,

20  disability coverage terminated after five years regardless of an employee's medical

21  condition (Id. at AR0005).  However, if the optional Buy- Up Plan 1 is selected, the

22

23

24        disputed; and (2) any additional facts that establish a genuine issue of material
          fact or otherwise preclude judgment in favor of the moving party.

25  Id.  Where such a statement is not filed by the party opposing summary judgment, the
    facts as set forth in the moving party's statement of facts will be deemed admitted for

26  purposes of the summary judgment motion.  Id.  As a result, Defendants' version of
    events as set forth in its Statement of Facts will be used for purposes of summary

27  judgment.  Furthermore, it does not appear that any of the material facts are in dispute by

28  the parties.

benefit rises to 50% of the monthly pre-disability earnings, but not more than $4,000.00 (Id. at AR0008).  Finally, if the optional Buy-Up Plan 2 is selected, the benefit rises to 60% of the monthly pre-disability earnings, but not more than $4,000.00 (Id.).  The duration of coverage could also be extended through purchase of the Buy-Up Plan 1 or Buy-Up Plan 2, which extended coverage until normal retirement age (Id. at AR0006). Horton elected Buy-Up Plan 2, thereby increasing his coverage to provide income replacement of 60% of pre-disability earnings and a maximum monthly benefit of $4,000.00 (Id. at AR0024, AR0044, AR0064, AR0071; Doc. 62, Ex.2, PRU HORTON AR0122).[2]  Horton also extended his coverage from 5 years to normal retirement age through his election of Buy-Up Plan 2 (Doc. 62, Ex. 1, PRU HORTON AR0006).

Horton was found to be disabled by Prudential as of April 3, 2002 (DSOF ¶ 1). Giant  submitted to Prudential a "Group Disability Insurance Employer Statement" containing the following information:

> Employee: Richard Horton
> LTD coverage selected: 60%
> Date last worked: October 2, 2001
> Normal earnings prior to his absence (exclude bonus, overtime, etc.): $15.80
> Frequency of earnings: Hourly
> Number of hours worked per normal work week: 40

(Id. ¶ 2).  In 1999, Horton earned $45,092.53 in gross pay, of which $11,671.65 was overtime pay, and $1,300.00 was bonus pay (Id. ¶ 3).  In 2000, Horton earned $45,751.47 in gross pay, of which $11,983.07 was overtime pay, and $1,350.00 was bonus pay (Id. ¶ 4).  In 2001, Horton earned $41,952.73 in gross pay, of which $9,335,69 was overtime

---

[2]The evidence of Horton's election of the Buy-Up Plan 2 can be found in the administrative record. Each of the identified pages shows "LTD60%" under the "TaxDeds." field, representing Horton's participation in the Buy-Up Plan 2 (Doc. 62, Ex. 1, PRU HORTON AR0024, AR0044, AR0064, AR0071; Doc. 62, Ex.2, PRU HORTON AR0122). Also, the "Group Disability Insurance Employer Statement" submitted by Giant to Prudential indicates Horton had selected the 60% LTD Coverage (Doc. 62, Ex. 2, PRU HORTON 0134-0135).

1   and $1,400.000 was bonuses (Id. ¶ 5).  Upon the determination that Horton was disabled

2   in 2002, Horton was awarded a monthly disability benefit of $1,643.19 (Id. ¶ 6).

3       The Booklet-Certificate[3] provides for an offset in disability benefits based upon the

4   receipt of Social Security Disability Benefits ("SSDB"), but this "Adjusted Benefit" is not

5   to be less than $100 per month (Id. ¶ 7).  Horton was specifically advised in writing that

6   "should SSDB be awarded an overpayment will occur on your claim that will need to be

7   repaid."  (Id. ¶ 8)  On December 27, 2002, Horton executed a "Reimbursement

8   Agreement" that provided that if any SSDB were retroactively awarded to him, he agreed

9   to repay Prudential "the amount paid to me under this Agreement in excess of the

10  amounts to which I would have been entitled under the terms of the Plan."  (Id. ¶ 9)

11  Subsequently, on February 18, 2003, Horton was awarded SSDB, including a retroactive

12  determination of benefits dating to April of 2002 when he was deemed disabled by

13  Prudential (Id. ¶ 10).  The SSDB totaled $12,033.00 with a monthly award of $1,622.00

14  (Id.).  Then, on April 15, 2003, Prudential sent a letter to Horton's counsel indicating that

15  an overpayment of $15,006.38 had been made based on the February 18 award notice (Id.

16  ¶ 11).  The letter included a calculation showing the overpayments (Id.).  On May 19,

17  2003, Horton contested the overpayment and asked that Prudential pay "the full amount

18  due without any offset." (Id. ¶ 12)

19                          **PROCEDURAL BACKGROUND**

20      This case arises from Horton's claim for long-term disability benefits under the

21  Giant LTD Plan for employees of Giant.  The long-term disability benefit is funded

22  through a group insurance policy purchased from Prudential.  In April 2002, Mr. Horton's

23  claim for long term disability benefits was approved, and thereafter Horton began

24  receiving monthly benefit payments.  The dispute in this case relates to the amount of

25

26      [3]Defendants use the term "Booklet-Certificate" to refer to the plan's contract
27  document titled "Giant Industries, Inc. Hourly Retail Employees Long Term Disability
    Coverage Core and Buy-up Plans" which includes a "Booklet" and a "Certificate of
28  Coverage." (Doc. 62, Ex. 1, PRU HORTON AR0001-0023; Doc. 62, Ex. 5, AR0535-0540)

1   those monthly benefits.  Upon exhausting his administrative appeals, Horton brought this

2   action against Prudential and Giant LTD Plan seeking benefits under the group long-term

3   disability policy issued by Prudential to Giant (Doc. 1).

4          The parties previously filed cross-motions for summary judgment with this Court

5   (Docs. 30, 43).  However, these motions were denied by the Court without prejudice with

6   leave to refile (Doc. 55).  In its March 17, 2008 ruling, the Court found that the parties

7   had not provided the administrative record to the Court and had failed to provide cogent

8   analysis of several relevant issues (Id.).  Consequently, the Court ordered the parties to

9   refile their motions for summary judgment with specific citations to the administrative

10  record as well as to submit supplemental briefing as to several questions (Id.).[4]

11  Defendants filed the current Motion for Summary Judgment on April 30, 2008 (Doc. 58).

12  Plaintiff subsequently filed a Cross-Motion for Summary Judgment on June 26, 2008

13  (Doc. 66).[5]  The supplemental briefing addressing the Court's designated four questions

14  was filed by Defendant on April 30, 2008 (Doc. 61), and by Plaintiff on May 2, 2008

15  (Doc. 63).

16  _____

17       [4]The following four specific questions were given by the Court: (1) what extent the
    two-party test in Atwood v. Newmont Gold Co., Inc., 45 F.3d 1317, 1322-23 (9th Cir. 1995)

18  is applicable in this case; (2) what the purpose is behind the "Optional Plan"; set forth in the
    document entitled Your Enrollment Kit, which resulted in Plaintiff paying additional

19  premiums to Defendants in order to increase his disability payments; (3) who is the proper
    party for a benefit claim (i.e. Giant, Prudential, etc.); and (4) should the amount of offset

20  include money paid to Mr. Horton's attorney for the purpose of obtaining benefits?

21

22       [5]The Court notes that Horton did not comply with the Court Order of March 17, 2008

23  by failing to include any pincite citations to the administrative record in either his Cross-
    Motion for Summary Judgment (Doc. 66) or his Reply (Doc. 72).  This failure has forced the

24  Court to scour the administrative record for the documents attached to Horton's Cross-
    Motion to see whether they are in fact part of the administrative record.  As the Ninth Circuit

25  has noted, it is not the job of the district court to scour the record in search of a genuine issue
    of material fact.  Kennan v. Allen, 91 F.3d 1275, 1279 (9th Cir. 1996).  The nonmoving party

26  has the burden of "identify[ing[ with reasonable particularity the evidence that precludes

27  summary judgment."  Id. (quoting Richards v. Combined Ins. Co., 55 F.3d 247, 251 (7th Cir.

28  1995)).

1

**STANDARD OF REVIEW**

2       A court must grant summary judgment if the pleadings and supporting documents,

3  viewed in the light most favorable to the nonmoving party, "show that there is no genuine

4  issue as to any material fact and that the moving party is entitled to judgment as a matter

5  of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986);

6  Jesinger v. Nev. Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir. 1994). Substantive law

7  determines which facts are material.  See Anderson v. Liberty Lobby, 477 U.S. 242, 248

8  (1986); see also Jesinger, 24 F.3d at 1130. "Only disputes over facts that might affect the

9  outcome of the suit under the governing law will properly preclude the entry of summary

10  judgment." Anderson, 477 U.S. at 248. The dispute must also be genuine, that is, the

11  evidence must be "such that a reasonable jury could return a verdict for the nonmoving

12  party." Id.; see Jesinger, 24 F.3d at 1130.

13       A principal purpose of summary judgment is "to isolate and dispose of factually

14  unsupported claims." Celotex, 477 U.S. at 323-24. Summary judgment is appropriate

15  against a party who "fails to make a showing sufficient to establish the existence of an

16  element essential to that party's case, and on which that party will bear the burden of

17  proof at trial." Id. at 322; see also Citadel Holding Corp. v. Roven, 26 F.3d 960, 964 (9th

18  Cir. 1994). The moving party need not disprove matters on which the opponent has the

19  burden of proof at trial. See Celotex, 477 U.S. at 323-24. The party opposing summary

20  judgment need not produce evidence "in a form that would be admissible at trial in order

21  to avoid summary judgment." Id. at 324. However, the nonmovant "may not rest upon

22  the mere allegations or denials of [the party's] pleadings, but . . . must set forth specific

23  facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see Matsushita

24  Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585-88 (1986); Brinson v.

25  Linda Rose Joint Venture, 53 F.3d 1044, 1049 (9th Cir. 1995).

26       Where the decision to grant or deny ERISA benefits is reviewed for abuse of

27  discretion, a motion for summary judgment is merely the conduit to bring the legal

28  question before the district court and the usual tests of summary judgment, such as

1   whether a genuine dispute of material fact exists, do not apply.  <u>Bendixen v. Standard</u>
2   <u>Ins. Co.</u>, 185 F.3d 939, 942 (9th Cir.1999) citing 29 U.S.C.A. § 1132(a)(1)(B); Fed. Rules
3   Civ. Pro. Rule 56(c).

4                                         **DISCUSSION**

5           In seeking summary judgment, the parties do not challenge that Horton was
6   covered under Group Policy #24929 issued by Prudential to Giant (Doc. 58, 1:7-9).
7   Likewise, they do not challenge that Horton was determined to be disabled under the
8   Giant LTD Plan (<u>Id.</u> 1:9-10).  Rather than the issue of eligibility for benefits, the lawsuit
9   centers on a two-part dispute concerning the <u>amount</u> of benefits to which Horton is
10  entitled (<u>Id.</u> 1:11-12).  First, the definition of "earnings" used to calculate Horton's long-
11  term disability benefits is disputed (<u>Id.</u> 1:12-14).  Second, the amount of set-offs applied
12  to Horton's long-term disability benefits due to retroactive SSDB is disputed (<u>Id.</u> 1:14-
13  15).

14  **I.      Defendants' Evidentiary Objections**

15          As a preliminary matter, Defendants have filed separate evidentiary objections to
16  Horton's Cross-Motion for Summary Judgment (Doc. 69).  Specifically, Defendants
17  move to strike Appendix 2, titled "Cost Calculation Worksheet," offered in support of
18  Horton's Cross-Motion for Summary Judgment (<u>Id.</u>).  First, Defendants object that the
19  handwriting in Appendix 2 has not been authenticated, a prerequisite to admissibility (<u>Id.</u>
20  3:4-6).  Appendix 2 supposedly is used by Horton to infer that bonuses and overtime were
21  used in calculating long-term disability premiums (<u>Id.</u>).  Second, Defendants object to the
22  use of the handwriting in Appendix 2 as evidence of premiums paid by Horton (<u>Id.</u> 4:13-
23  15).  Defendants claim that Horton is using the handwritten notes as a summary of
24  premiums he paid, despite the fact that there is no evidence of who wrote them, when
25  they were written, and whether they reflect actual premiums paid (<u>Id.</u> 4:20-24).

26          Local Rule 7.2(m)(2) states, "An objection to the admission of evidence offered in
27  support of or opposition to a motion must be presented in the objecting party's responsive
28  or reply memorandum (or, if the underlying motion is a motion for summary judgment, in

the party's response to another party's separate statement of material facts) and not in a separate motion to strike or other separate filing."  LRCiv 7.2(m)(2).  While Defendants filed a separate document titled "Defendant's Evidentiary Objections to Plaintiff's Motion for Summary Judgment," the Court finds that Defendants have complied with the Local Rules because their objections were also mentioned in their Response.  Since the parties do not dispute the underlying facts in the present case, Defendants did not file a separate responsive memorandum to Horton's statement of material facts.  Instead, Defendants only filed a Response to Horton's Cross-Motion for Summary Judgment that included the same objections raised in Defendants' separately filed "Evidentiary Objections," albeit in a somewhat abbreviated form (Doc. 67, 3:21-4:2, 11:2-20).  Therefore, the Court will consider Defendants' objections, but will limit its review to what is contained in Defendants' Response.

The disputed Cost Calculation Worksheet is part of the administrative record in this case, and thus, the Court considered this document (Doc. 62, Ex. 3, PRU HORTON AR0323).  Regardless of Defendants' objections, however, exclusion of the handwriting has no effect on the merits of the summary judgment motions.  Payroll records contained in the administrative record show the amount of money deducted from Horton's earnings for long-term disability premiums, namely $7.00 per week (Doc. 62, Ex. 4, PRU HORTON AR0333-334).  Moreover, Horton has not premised any of his arguments on the handwriting or alleged that it demonstrates premiums he actually paid.

**II.    Motion for Summary Judgment**

     **A.    Standard of Review in ERISA cases**

Next, the Court must decide the proper standard of review to be applied. Defendants argue that an abuse of discretion (arbitrary and capricious) standard of review is appropriate because the benefit plan has given Prudential, as the Claims Administrator, the discretionary authority to determine benefits (Doc. 58, 5:3-5).  Horton, in response, claims that the proper standard of review is de novo for three reasons (Doc. 66, 4:7-9). Horton contends first that Prudential was not given discretion to determine issues of law

1    like those now before the Court (Id. 4:9-12).  Second, Prudential only retained discretion

2    to interpret the terms of the "Group Contract" and not the Summary Plan Description

3    ("SPD") at issue in the case (Id. 4:12-5:25).  Since no discretion was retained as to the

4    provisions of the SPD, de novo review is necessary (Id.).  Third, Horton argues that in

5    rendering an adverse determination for Horton, Prudential did not follow statutory

6    mandates in providing Horton with proper notice of claim review procedures (Id. 5:25-

7    7:22).

8          The standard of review in ERISA claims depends on the role of the plan

9    administrator or fiduciary.  When a plan does not confer discretion upon a plan

10   administrator or fiduciary to determine eligibility for benefits or to construe the terms of

11   the plan, district courts should review the denial of benefits de novo.  Firestone Tire &

12   Rubber Co. v. Brush, 489 U.S. 101, 115 (1989).  However, if the benefit plan gives the

13   administrator discretionary authority to determine eligibility for benefits or to construe

14   the terms of the plan, denial of benefits should be reviewed for abuse of discretion.  Id.  A

15   plan administrator or fiduciary has discretion only where discretion is "unambiguously

16   retained" by the administrator or fiduciary.  Kearney v. Standard Ins. Co., 175 F.3d 1084,

17   1090 (9th Cir. 1999) (en banc) (quoting Bogue v. Ampex Corp., 976 F.2d 1319, 1325 (9th

18   Cir. 1992)); Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 963 (9th Cir. 2006) (en

19   banc).

20         The caselaw has emphasized that there are no "magic" words that provide

21   discretion, and the words "discretion" or "authority" need not even be used.  See Sandy v.

22   Reliance Standard Life Ins. Co., 222 F.3d 1202, 1207 (9th Cir. 2000).  The Supreme

23   Court stated in Firestone that a plan grants discretion if the administrator possesses the

24   "power to construe disputed or doubtful terms" in the plan.  Firestone, 489 U.S. at 111

25   (stating that Firestone cannot take advantage of the principles of discretion "for there is

26   no evidence that under Firestone's termination pay plan the administrator has the power

27   to construe uncertain terms or that eligibility determinations are to be given deference").

28   Likewise, the Ninth Circuit has held that wording in the plan that gives the power to

interpret plan terms and make final benefits decisions bestows discretion on the

administrator.[6]  Abatie, 458 F.3d at 963-64.

In the present case, the provision regarding the discretion given to Prudential is

included in an ERISA Statement following the Certificate of Coverage.[7]  The provision

reads as follows:

> The Prudential Insurance Company of America as Claims Administrator has the sole discretion to interpret the terms of the Group Contract, to make factual findings, and to determine eligibility for benefits.  The decision of the Claims Administrator shall not be overturned unless arbitrary and capricious.

(DSOF ¶ 16; Doc. 62, Ex. 5, PRU HORTON AR0536)  The Court finds that this

language grants Prudential sole discretion to both interpret the terms of the Group

Contract, as well as to make benefits eligibility decisions, making an abuse of discretion

---

[6] See, e.g., Grosz-Salomon v. Paul Revere Life Ins. Co., 237 F.3d 1154, 1159 (9th Cir. 2001) (holding that a plan granted discretion when it provided that the plan administrator "has the full, final, conclusive and binding power to construe and interpret the policy under the plan . . . [and] to make claims determinations" (internal quotations omitted)); Bergt v. Ret. Plan for Pilots Employed by Mark-Air, Inc., 293 F.3d 1139, 1142 (9th Cir. 2002) (holding that a plan that gave the administrator the "power" and "duty" to "interpret the plan and resolve ambiguities, inconsistences and omissions" and to "decide on questions concerning the plan and the eligibility of any Employee" conferred discretion (internal quotations omitted)).  See also Abatie, 458 F.3d at 965 (discretion conferred when plan gave the administrator the responsibility to interpret the plan's terms, make final benefits determinations, and conferred "full and final" authority on the administrator).

[7] The policy was issued to Horton under Group Policy Number DG-24929-AZ. According to the policy, the "Booklet and Certificate of Coverage together form your Group Insurance Certificate."  (Doc. 62, Ex. 1, PRU HORTON AR0004)  The provision allegedly granting Prudential discretion is contained in an ERISA Statement.  The text of this ERISA Statement is preceded by a notice that reads, "This ERISA Statement is not part of the Group Insurance Certificate."  (Doc. 62, Ex. 5, PRU HORTON AR0536)  The Court declines to consider whether, in light of this statement, the ERISA Statement is a plan document and what effect, if any, this fact has on the standard of review.  Horton has raised no such arguments, and the Court will not rule on matters not before it.  Instead, the Court will analyze the above provision as though it were a part of the policy.  Indeed, Horton in making his arguments seems to view the language in the ERISA Statement  as granting Prudential some degree of discretion.

review appropriate under the caselaw.  This discretion is granted to Prudential as the Claims Administrator in unambiguous terms.  The Court will now consider Horton's arguments in favor of de novo review.

Horton's first argument fails because Defendants have never contended that Prudential retained discretion to decide legal issues.  Rather, Prudential was given discretion to interpret plan terms, make factual findings, and decide benefits eligibility.  In the present case, this discretion included determining the appropriate amount of benefits to pay Horton.  Likewise, Horton's second argument is unavailing because he provides no legal authority to support his contention that Prudential only retained discretion to interpret the "Group Contract" and not the SPD.

For his third and final argument, Horton asserts that de novo review should apply because Prudential failed to follow statutory mandates in handling Horton's benefits claim (Doc. 66, 5:25-7:22).  Specifically, Horton alleges that Prudential did not comply with 29 U.S.C. § 1133 and 29 C.F.R. § 2560.503-1(g)(1) (Id. 6:1-19).  Horton contends that this failure constitutes a "blatant disregard of statutorily mandated procedures" warranting de novo review (Id. 7:19-22).

Under Ninth Circuit caselaw, a procedural irregularity "does not usually justify de novo review."  Abatie, 458 F.3d at 972.  A small procedural irregularity is a matter to be weighed in deciding whether an administrator's decision was an abuse of discretion, just as a court would weigh a conflict of interest.  Id.  "Procedural violations of ERISA do not alter the standard of review unless those violations are so flagrant as to alter the substantive relationship between the employer and employee, thereby causing the beneficiary substantive harm."  Gatti v. Reliance Standard Life Ins. Co., 415 F.3d 978, 985 (9th Cir. 2005).  "When an administrator engages in wholesale and flagrant violations of the procedural requirements of ERISA, and thus acts in utter disregard of the

underlying purposes of the plan" de novo review of the administrator's decision to deny

benefits is appropriate.  Abatie, 458 F.3d at 971.[8]

Section 503 of ERISA states that every plan must provide a participant with notice

of certain claim review procedures.

> 1.  In accordance with regulations of the Secretary, every employee benefit plan shall ---
> 
> a) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
> b) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133.

The Code of Federal Regulations sets forth the minimum requirements for

employee benefit plan procedures related to participants' claims for benefits under 29

U.S.C. § 1133.  As to the first requirement of a denial notice, it is required to set forth, in

a manner calculated to be understood by the claimant —

> (i) The specific reason or reasons for the adverse determination;
> (ii) Reference to the specific plan provisions on which the determination is based;
> (iii) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;
> (iv) A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review[.]

29 C.F.R. § 2560.503-1(g)(1).

---

[8]The Ninth Circuit case Blau v. Del Monte Corp. provides an example of the type of egregious procedural violation that would alter the standard of review.  748 F.2d 1348 (9th Cir. 1984), abrogation on other grounds recognized by Dytrt v. Mountain State Tel. & Tel. Co., 921 F.2d 889, 894 n.4 (9th Cir. 1990)).  In that case, the administrator kept policy details secret from the employees, failed to give the employees plan information in writing, and provided no claims procedure to them.  The court found the administrator "failed to comply with virtually every applicable mandate of ERISA."  Id. at 1353.

As part of the "full and fair review" of the claim and adverse benefit determination required by 29 U.S.C. § 1133(2), the employee benefit plan's claims procedures must do the following:

> (i) Provide claimants at least 60 days following receipt of a notification of an adverse benefit determination within which to appeal the determination;
> (ii) Provide claimants the opportunity to submit written comments, documents, records, and other information relating to the claim for benefits;
> *(iii) Provide that a claimant shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits. . .*
> (iv) Provide for a review that takes into account all comments, documents, records, and other information submitted by the claimant relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination.

29 C.F.R. § 2560.503-1(h)(2) (emphasis added).

The Ninth Circuit has emphasized that the regulations require "a meaningful dialogue" between ERISA plan administrators and their beneficiaries. Booton v. Lockheed Med. Benefit Plan, 110 F.3d 1461, 1463 (9th Cir. 1997). If benefits are denied, the reason for the denial should be stated in "reasonably clear language" with reference to the specific plan provisions upon which the denial is based. Id. If more information is needed before the plan administrator can make a reasoned decision, the plan administrator has an obligation to request that information. Id.

Defendants approved Horton's long-term disability benefits claim, however, Horton disputed the computation of the monthly benefit because it did not include overtime compensation and bonus pay in the earnings calculation (Doc. 62, Ex. 4, PRU HORTON AR0378). In Prudential's denial to include overtime and bonuses in determining earnings, Horton admits that he was advised of a procedure which allows a reasonable opportunity for a full and fair review (Doc. 66, 7:1-3).[9] However, Horton

_____

[9]Although Horton concedes that Prudential advised him of a procedure which allows a reasonable opportunity for a full and fair review, Horton then argues that certain requirements listed in the Code of Federal Regulations as necessary for a "full and fair review" were not satisfied. Despite the apparent concession by Horton, the Court will

1   argues that Prudential failed to meet the requirements laid out in the Code of Federal
2   Regulations by not providing Horton the reasons for the denial of benefits, reference to
3   the relevant plan provisions, or additional information needed to perfect the claim (Id.
4   7:3-6).  Horton also contends that Prudential did not advise him of his right to commence
5   a civil action or of his right to obtain documents pursuant to ERISA (Id. 6:6-8).

6          However, Prudential did advise Horton on more than one occasion that the basis of
7   the denial was the definition of "earnings" contained in the plan (Doc. 62, Ex. 4, PRU
8   HORTON AR0423, AR0465-0466).  Indeed, Prudential quoted the definition verbatim in
9   its April 15, 2004 letter to Plaintiff's counsel (Id. at AR0465).  It also included a copy of
10  the page containing the definition with its letter (Id. at AR0466).  This explanation
11  satisfies ERISA's requirement that a claimant be provided the "specific reasons for the
12  denial" and the plan provisions on which the denial is based.  29 U.S.C. § 1133(1); 29
13  C.F.R. § 2560.503-1(g)(1)(i-ii).  "The requirement under ERISA that the plan
14  administrator give 'specific reasons' for the denial 'is not the same thing as the reasoning
15  behind the reasons.'"  Safavi v. SBC Disability Income Plan, 493 F. Supp. 2d 1107, 1118
16  (C.D. Cal. 2007) (quoting Gallo v. Amoco Corp., 102 F.3d 918 (7th Cir. 1996)).
17  Furthermore, no further information was needed from Horton because Prudential knew
18  the amount of Horton's earnings and could subtract any overtime or bonuses.  See 29
19  C.F.R. § 2560.503-1(g)(1)(iii).  Although it gave Horton the basis for the denial, the
20  Court finds that Prudential never advised Horton of his right to commence a civil action,
21  or his right to obtain documents under ERISA.

22         Despite this procedural violation, the Court concludes that Prudential's failure did
23  not significantly affect the proceedings in this case.  Horton was provided enough
24  information to know the reason that Prudential did not award him the amount of benefits
25  to which he felt he was entitled, as well as the plan provision on which the determination

26

27  address Horton's argument that Prudential failed to follow statutory mandates in handling
28  Horton's benefits claim.

1   was based.  This knowledge was sufficient to enable Horton to formulate his further

2   challenge to the denial, the challenge that he has mounted in this suit.  Moreover, the

3   series of letters between Horton's attorney and Prudential indicate the type of

4   "meaningful dialogue" that ERISA and the supporting regulations favor (Doc. 62, Ex. 4,

5   AR0337-0338, AR0370, AR0378, AR0383, AR0388-0389, AR0396, AR0399, AR0423,

6   AR0455-0456, AR0465; Doc. 62, Ex. 5, AR0470).  Once Prudential ascertained what was

7   being disputed by Horton, it set out the basis for its earnings total and the plan authority

8   supposedly supporting it.

9        The procedural irregularity here was not "so flagrant as to alter the substantive

10  relationship between the employer and employee, thereby causing the beneficiary

11  substantive harm" and thus, de novo review is not appropriate.  <u>Gatti</u>, 415 F.3d at 985.

12  While the procedural irregularity is a matter to be weighed in deciding whether an

13  administrator's decision was an abuse of discretion, the irregularity in the present case

14  will be given little weight for the reasons stated above.

**1.    Prudential's Conflict of Interest**

16       In its summary judgment motion, Defendants acknowledge the existence of a

17  structural conflict of interest due to Prudential acting as both the funding source and the

18  administrator of the Giant LTD Plan (Doc. 58, 5:6-10).  However, Defendants argue that

19  any such conflict must be weighed as a factor in abuse of discretion review, and that

20  positive factors outweigh the conflict concerns (<u>Id.</u> 5:17-6:2).

21       A structural conflict of interest results when an insurer acts as both the funding

22  source and the plan administrator.  <u>Metro. Life Ins. Co. v. Glenn</u>, 128 S. Ct. 2343, 2349

23  (2008).  Where a plan administrator operates under a conflict of interest—in this case, a

24  structural conflict—a court must weigh the conflict " '*as a factor* in determining whether

25  there is an abuse of discretion.' "  <u>Id.</u> at 2348 (quoting <u>Firestone</u>, 489 U.S. at 115)

26  (emphasis in original).  As noted in <u>Abatie</u>, consideration of the conflict can "affect

27  judicial review," and a court is required to consider the conflict whenever it is found to

28  exist, and to temper the abuse of discretion standard with skepticism "commensurate"

with the conflict.  458 F.3d at 959, 965, 969.  In determining how the conflict should be taken into account, the U.S. Supreme Court offered the following guidance:

> The conflict of interest at issue here, for example, should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration.  It should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decisionmaking irrespective of whom the inaccuracy benefits.

MetLife, 128 S. Ct. at 2351.

In the present case, the Court finds that a structural conflict does exist due to Prudential serving as both the funding source and administrator of the long-term disability plan.  However, Plaintiff has offered no evidence that this conflict affected the benefits decision in his case, and indeed, Plaintiff does not even address the conflict issue in any of his briefing.  Therefore, the Court finds that the conflict should be afforded little weight in its abuse of discretion review.

**B.    Definition of "Earnings"**

In determining the proper calculation of earnings, the parties dispute first what document is the SPD required to be provided to plan participants and beneficiaries under ERISA.  Horton contends that the brochure "Your Enrollment Kit, Group Disability Insurance" ("Enrollment Brochure") is a SPD (Doc. 66, 1:23-21; Doc. 62, Ex. 3, PRU HORTON AR0328-0331).  In response, Defendants claim that the SPD is the Booklet-Certificate (Doc. 67, 5:24-6:8; Doc. 62, Ex. 1, PRU HORTON AR0001-0023; Doc. 62, Ex. 5, AR0535-0540).  Defendants further contend that even if the Enrollment Brochure was the SPD, no actual conflict existed between the Brochure and the Booklet-Certificate as to the definition of earnings (Doc. 58, 8:15-11:3).

ERISA requires welfare benefit plans to be established and maintained pursuant to a written instrument.  29 U.S.C. § 1102(a)(1).  In addition, an employer must provide plan participants with a written SPD which describes the benefit plan.  § 1022(a).  This SPD

"shall be written in a manner calculated to be understood by the average plan participant,

and shall be sufficiently accurate and comprehensive to reasonably appraise such

participants and beneficiaries of their rights and obligations under the plan." § 1022(a).

There are twelve requirements by statute that a document must satisfy to be considered a

SPD.  A SPD must include the following:

> (1) The name and type of administration of the plan;
> (2) The name and address of the person designated as agent for the service of legal process, if such person is not the administrator;
> (3) The name and address of the administrator;
> (4) Names, titles, and addresses of any trustee or trustees (if they are different from the administrator);
> (5) A description of the relevant provisions of any applicable collective bargaining agreement;
> (6) The plan's requirements respecting eligibility for participation and benefits;
> (7) A description of the provisions providing for nonforfeitable pension benefits;
> (8) Circumstances which may result in disqualification, ineligibility, or denial or loss of benefits;
> (9) The source of financing of the plan and the identity of any organization through which benefits are provided;
> (10) The date of the end of the plan year and whether the records of the plan are kept on a calendar, policy, or fiscal year basis;
> (11) The procedures to be followed in presenting claims for benefits under the plan; and
> (12) The remedies available under the plan for the redress of claims which are denied in whole or in part.

§ 1022(b).  As to the above statutory requirements, the parties dispute whether the

Enrollment Brochure satisfies requirements one, two, three, ten, eleven and twelve (Doc.

72, 7:2-21; Doc. 68, chart pp.4-5).[10]  While Plaintiff insists that requirements one, two,

and three are satisfied, he concedes that requirements eleven and twelve are not (Doc. 72,

7:2-21).  Rather, Plaintiff contends that these two requirements are addressed in a

separate Long Term Disability Administration Manual ("Administration Manual") (Doc.

72, 2:8-3:22, 7:2-21; Doc. 63, Appendix 7).

After examining the Enrollment Brochure, the Court finds that requirements eleven

and twelve indeed are not met.  This brochure claimed to be the SPD by Plaintiff does not

---

[10]Defendants concede that the fourth, fifth, and seventh requirements are not applicable to the present case, and that six, eight, and nine are met by the Enrollment Brochure (Doc. 68, chart on pp.4-5).

1  give any information regarding the procedures to be followed in presenting benefits

2  claims or the possible remedies available to redress denied claims (Doc. 62, Ex. 3, PRU

3  HORTON AR0328-0331).  The Administration Manual cannot supply the missing

4  information, either (Doc. 63, Appendix 7).  Since it does not appear in the administrative

5  record, there is no indication that Plaintiff was ever given this document.[11]  Moreover, the

6  Administration Manual explicitly states that it was "designed to assist Benefits and

7  Human Resources Managers in the role of administrator of the Group Disability

8  Program." (Id. at GIANT 00220)  The manual was not written to be given to insured

9  individuals such as Plaintiff.  Therefore, the Court concludes that the brochure is not the

10  SPD.[12]

11       Defendants argue that the SPD is not the Enrollment Brochure, but the Booklet-

12  Certificate (Doc. 67, 5:24-6:8).  While Horton disputes that he ever received this

13  document, there is no evidence of this objection other than counsel's statement in the

14  briefing (Doc. 72, 6:4-7).  Nothing appears in the administrative record  that indicates

15  Horton was not given the Booklet-Certificate.  In light of this lack of evidence, the Court

16  finds that the Booklet-Certificate is the SPD.[13]  Consequently, there is no conflict between

17

18       [11] When applying the abuse of discretion standard of review, the general rule is that

19  a district court's review is limited to the administrative record.  Abatie, 458 F.3d at 970.
   However, the district court may "consider evidence outside the administrative record to decide

20  the nature, extent, and effect on the decision-making process of any conflict of interest...." Id.

21  The district court may also consider outside evidence if "procedural irregularities prevented the
   full development of the administrative record."  Burke v. Pitney-Bowes Inc. Long-Term

22  Disability Plan, 544 F.3d 1016, 1028 (9th Cir. 2008).  Here, Horton is using evidence
   outside the administrative record to determine which document(s) is a SPD.  Therefore,

23  the Court may not consider evidence outside the administrative record in this situation.

24       [12]A booklet did not constitute a SPD when ten of the twelve required elements under

25  § 1022(b) were not met.  Pisciotta v. Teledyne Indus., Inc., 91 F.3d 1326, 1330 (9th Cir.
   1996).

26

27       [13]While ERISA contemplates a "plan description" and a "summary plan description,"
   29 U.S.C. § 1022(a), the regulations have merged the SPD and the plan description into a

28  single document.  "The plan description required by section 102 of the Act shall consist of

documents regarding the definition of "earnings" under the plan, and earnings would not include overtime or bonuses.

Alternatively, Defendants argue that even if the Enrollment Brochure was the SPD, as Horton claims, no actual conflict existed between the Enrollment Brochure and the Booklet-Certificate (Doc. 58, 8:15-11:3).  Horton disputes this assertion, and argues that a conflict does in fact exist (Doc. 66, 9:9-10).[14]

If plan documents conflict, courts generally bind ERISA defendants to the document more favorable to the employee.  Banuelos v. Constr. Laborers' Trust Funds, 382 F.3d 897, 904 (9th Cir. 2004) (citing Bergt, 293 F.3d at 1139).  In Bergt, the plan master document unambiguously qualified the employee as a member of the retirement plan, but the SPD unambiguously excluded him.  See 293 F. 3d at 1144-46.  The plan master document was deemed to control because it specified the terms of the plan, whereas the SPD simply summarized the relevant provisions.  Additionally, the court held that the burden of uncertainty should fall on the drafting party.  Id. at 1145.  The court noted that the law should provide a strong incentive for employers to draft SPDs

---

a summary plan description as described in section 102(b) of the Act."   29 C.F.R. § 2520.102-1.  Courts have held that the "plan description" and the SPD can be the same document.  See e.g., Krishan v. McDonnell Douglas Corp., 873 F. Supp. 345, 350 n.3 (C.D. Cal. 1994).

[14]Horton also argues that the doctrine of reasonable expectations should apply in this case because he relied on the representations in the SPD.  In Saltarelli v. Bob Baker Group Medical Trust, 35 F.3d 382 (9th Cir. 1994), the Ninth Circuit adopted "the doctrine of reasonable expectations as a principle of the uniform federal common law informing interpretation of ERISA-governed insurance contracts." 35 F.3d at 387.  Under this doctrine, an insurance policy's attempted exclusion is unenforceable where it is "not clear, plain, and conspicuous enough to negate [a] layman['s] . . . objectively reasonable expectations of coverage."  Id.  In the present case, the definition of "earnings" was conspicuous, plain, and clear in the Booklet-Certificate.  It was included in that document's definitional section and there was no attempt by Defendants to bury it deep in the plan language.  Consequently, the Court finds that the reasonable expectations doctrine is not applicable.

1   consistent with plan master documents, "a relatively simple task." Id.  Similarly, when

2   two versions of the ERISA plan existed—one including a five-year vesting period and

3   one not—the version which included a five-year vesting period was held to control

4   because it was more favorable to the employee.  Banuelos, 382 F.3d at 904.

5        In this case, Plaintiff's assertion that a conflict exists between the SPD and the

6   Booklet-Certificate is misguided.  Unlike the situation in Banuelos and Bergt where there

7   was a direct conflict between the SPD and the master plan documents, here the SPD is

8   silent on the definition of earnings, while the master plan document (Booklet-Certificate)

9   includes an earnings definition.  The circuits generally agree that the same rule should not

10  be invoked if no direct conflict exists or if the SPD is silent on an issue that is described

11  in the underlying policy.  In these situations, the master plan document is held to be

12  controlling because it provides additional clarification of the SPD.  See Martin v. Blue

13  Cross & Blue Shield of Va., Inc., 115 F.3d 1201, 1205 (4th Cir. 1997) (concluding that

14  underlying plan will control in absence of conflict between SPD and plan); Wise v. El

15  Paso Natural Gas Co., 986 F.2d 929, 938 (5th Cir. 1993) ("While clear and unambiguous

16  *statements* in the summary plan description are binding, the same is not true of silence")

17  (emphasis in original); Sprague v. Gen. Motors Corp., 133 F.3d 388, 401 (6th Cir. 1998)

18  (en banc) (holding that the rule that the SPD's terms control when they are in conflict

19  with the terms of the underlying plan does not apply when the SPD is silent because "[a]n

20  omission from the summary plan description does not, by negative implication, alter the

21  terms of the plan itself."); Mers v. Marriott Int'l Group Accidental Death and

22  Dismemberment Plan, 144 F.3d 1014, 1023 (7th Cir. 1998) ("An SPD's silence on an

23  issue does not estop a plan from relying on the more detailed policy terms when no direct

24  conflict exist"); Jenson v. SIPCO, Inc., 38 F.3d 945, 952 (8th Cir. 1994) (holding that a

25  SPD's silence does not override a specific provision in the underlying plan); Charter

26  Canyon Treatment Ctr. v. Pool Co., 153 F.3d 1132, 1136 (10th Cir. 1998) ("If the plan

27  documents do not conflict, the important policy of protecting beneficiaries from

28  misleading or false information contained in a summary plan description is not

implicated.  Thus, a summary plan description which is silent on a specific term or issue cannot prevail over the master plan document.").

While the Court can find no Ninth Circuit caselaw directly on point,[15] the Court finds the decisions from the Fourth, Fifth, Sixth, Seventh, Eighth, and Tenth circuits persuasive as they are generally in agreement on this issue.  Here, the SPD is silent on how the term "earnings" is defined.  The master plan document, the Booklet-Certificate, however, defines earnings as "the gross amount of money paid to you by the Employer in cash for performing the duties required of your job.  Bonuses, overtime pay, earning for more than 40 hours per week, and all other benefits are not included."  (Doc. 62, Ex. 1, PRU HORTON AR0018)  This silence, in the Court's view, is not indicative of a conflict, and thus, the Booklet-Certificate and its definition of earnings is held to be controlling.

## C.    Amount of Offset Due to Social Security Disability Benefits

Defendants claim that the amount of set-offs applied to Horton's long-term disability benefits due to retroactive SSDB is disputed (Doc. 58, 1:14-15).  Several pages

---

[15]None of the cases Defendants have cited from the Ninth Circuit are directly on point either.  Helm v. Sun Life Assurance of Canada, Inc., 34 Fed. Appx. 328, 332 (9th Cir. 2002) is an unpublished memorandum that is not precedent.  Furthermore, Parker v. BankAmerica Corp., 50 F.3d 757, 763-64 (9th Cir. 1995) and Carver v. Westinghouse Hanford Co., 951 F.2d 1083, 1087 (9th Cir.1991) present different factual situations from the case at bar.  Finally, Atwood v. Newmont Gold Co., Inc., 45 F.3d 1317 (9th Cir. 1995) held only that the SPD controls when the SPD fails to adequately explain how benefits could be lost or diminished and differs materially from the term of the plan.  Atwood, 45 F.3d at 1321, overruled on other grounds, Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 963 (9th Cir. 2006).  That differs from the present case where the Enrollment Brochure, if it is taken as the SPD, explained adequately how benefits could be lost or diminished.

However, several recent district court decisions have addressed the question of which document controls when either the SPD or the master plan document is silent on an issue.  See e.g., Metro. Life Ins. Co. v. Parker, 2007 WL 201232 *2 (D. Ariz. January 24, 2007) (citing Koons v. Adventis Pharm., 267 F.3d 768, 775 (8th Cir. 2004) (in the absence of a conflict between the SPD and the master plan document, plan documents govern); Providence Health Plans of Or. v. Simnitt, 2009 WL 700873 *5-6 (D. Or. March 13, 2009) (finding SPD controlling when master plan document was silent on issue).

of Defendants' brief is devoted to arguing that Horton's disability benefits are subject to offset for SSDB he received (Id.11:20-14:3).  The Booklet-Certificate, according to Defendants, specifically provides that long-term disability benefits will be reduced to account for SSDB received by Horton (Id. 11:20-23; DSOF ¶¶ 7-9).  Moreover, Horton signed a reimbursement form (Doc. 58, 11:23; DSOF ¶¶ 7-9).

In his Response, Horton agrees that his SSDB award is subject to offset (Doc. 66, 13:15).  However, Horton argues that the amount of offset should not include monies paid to his attorney for the purpose of obtaining the benefits because these monies were never received by Horton (Id. 13:16-20).  Rather, the Giant LTD Plan only provided for an offset of monies the beneficiary receives (Id. 13:20-21).

Defendants' supplemental brief indicates that they do not dispute that "the attorneys SSDB monies withheld by the Social Security Administration, and paid to Plaintiff's attorney Eric Slepian . . . are not available as an offset to satisfy Plaintiff's outstanding overpayments.  The calculation of overpayments to Prudential does not include these monies."  (Doc. 61,4:20-24)  In its own supplemental briefing, Horton agrees with Defendants' statement (Doc. 63, 3:28-4:4).

Based upon the parties' representations, there does not appear to be a dispute on this issue for the Court to resolve.  Attorney Eric Slepian's SSDB monies that were withheld by the Social Security Administration and later paid to him are not available as an offset to satisfy any alleged overpayment asserted by Defendants.

**D.    Abuse of Discretion Review**

Under abuse of discretion review, the Court must affirm Prudential's calculation of Horton's long-term disability benefits if the decision was "based upon a reasonable interpretation of the plan's terms and was made in good faith."  Bendixen v. Standard Life Ins. Co., 185 F.3d 939, 944 (9th Cir. 1999) (quoting Estate of Shockley v. Alyeska Pipeline Serv. Co., 130 F.3d 403, 405 (9th Cir. 1997) (internal quotation marks omitted).

Prudential's decision should not be disturbed unless the Court finds its factual findings were "clearly erroneous." Jordan v. Northrop Grumman Corp. Welfare Benefit Plan, 370 F.3d 869, 875 (9th Cir. 2004). In the present case, Prudential did not abuse its discretion when it calculated Horton's long-term disability benefits pursuant to the definition of "earnings" found in the Booklet-Certificate. This interpretation of the plan documents was reasonable and consistent with the plan language. In reaching this conclusion, the Court has considered the structural conflict of interest and procedural irregularities previously discussed. See pp. 11-16.

## CONCLUSION

The Court finds that Prudential did not abuse its discretion in calculating Horton's long-term disability benefits. Therefore, the Court will grant summary judgment in favor of Defendants.

Accordingly,

**IT IS HEREBY ORDERED GRANTING** Defendants' The Prudential Insurance Company of America and Giant Industries, Inc. Group Long Term Disability Policy Motion for Summary Judgment, or in the alternative, Partial Summary Judgment (Doc. 58).

**IT IS FURTHER ORDERED DENYING** Plaintiff Richard Horton's Cross-Motion for Summary Judgment (Doc. 66). Plaintiff shall take nothing, and judgment shall be entered in favor of Defendants.

**IT IS FURTHER ORDERED** directing the Clerk of the Court to enter judgment in favor of Defendants and terminate this action.

DATED this 27th day of March, 2009.

Stephen M. McNamee
United States District Judge